Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Maria Holden*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Holden,<br><br>          Plaintiff,<br><br>     v.<br><br>Hartford Life and Accident Insurance Company, Embarq Corporation Group Long Term Disability Plan, and Embarq Corporation.<br><br>          Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Maria Holden (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.     Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      Plaintiff is a resident of Maricopa County, Arizona.

3.      Upon information and belief, Plaintiff's employer Embarq Corporation (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford").  The specific Hartford policy is known as group policy GLT 675713.

4.      The Company's purpose in purchasing the Hartford policy was to provide disability insurance for its employees.  Upon information and belief, the Hartford policy may have been included in and part of the Embarq Corporation Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5.      Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Hartford.  Plaintiff believes that as it relates to her claim, Hartford functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

6.      Upon information and belief, Plaintiff believes Hartford operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit,* Hartford's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.[1]

7.     Upon information and belief, the Company, Plan and Hartford conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

## *Venue*

8.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

## *Nature of the Complaint*

9.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

10.     After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as an Engineer II on or about December 2, 2008.  Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

11.     Plaintiff thereafter applied for long term disability benefits under the relevant Hartford policy.

12.     The relevant long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

Disability or Disabled means:

1) during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;

2) for the 24 months(s) following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation,  and as a result of Your Current Monthly Earnings are less than 60% of Your Indexed Pre-disability Earnings;

3) after that, you are prevented from performing one or more of the Essential Duties of Any Occupation.

13.     The relevant long term disability policy provides the following definition of essential duty which applies to Plaintiff's claim:

Essential Duty means a duty that:

1) is substantial, not incidental;

2) is fundamental or inherent to the occupation; and

3) cannot be reasonably omitted or changed.

To be at work for the number of hours in your regularly scheduled work week is also an Essential Duty.

14.     In support of her claim for long term disability benefits Plaintiff submitted to Hartford medical records from her treating physicians supporting her total disability and the fact that she met the definition of disability set forth by the relevant Hartford policy.

15.     Hartford notified Plaintiff in a letter dated June 24, 2009 it had decided she did not meet the relevant definition of disability and was not entitled to benefits under the Policy.

16.     Hartford's June 24, 2009 denial letter confirms it failed to provide a full and fair review pursuant to ERISA because it completely failed to reference, consider, and/or selectively reviewed and de-emphasized most, if not all Plaintiff's evidence.

17.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the June 24, 2009 denial of her claim for long term disability benefits in a letter dated December 8, 2009.

18.     On December 29, 2009 Hartford notified Plaintiff she had a deadline of February 4, 2010 to submit all evidence in support of her appeal. Plaintiff notified Hartford she would be submitting additional medical information and which demonstrated she was unable to engage in any occupation as set forth in the relevant Hartford long term disability policy.

19.     On appeal, Plaintiff submitted a January 27, 2010 medical record from her board certified treating physician who opined, "I believe that the patient has been disabled since December 1, 2008." Plaintiff also submitted a Functional Capacity Evaluation (FCE) report prepared by a qualified physical therapist who after examining Plaintiff and administering various tests, opined, "[I] agree with the findings that the patient is incapable of performing work even at the sedentary level" and concluded, the "[s]ubject is disabled totally from all work activities."

20.     Plaintiff also submitted a February 1, 2010, narrative letter from another board certified treating physician who opined, "I believe that Ms. Holden has been unable to work since I originally saw her on January 14, 2010. I also feel it is reasonable to assume that she has been unable to work since December 1, 2008" and that due to Plaintiff's "age and the chronic nature of her medical conditions, I feel it is reasonable to assume that she will never be able to sustain any form of gainful employment." Plaintiff also submitted a February 1, 2010 vocational report authored by a rehabilitation expert

who reviewed the evidence, interviewed Plaintiff and ultimately concluded, "Given the combination of disabilities...it is from a vocational standpoint my professional opinion [Plaintiff] is completely disabled from the workforce."

21.     As part of its review of Plaintiff's claim, Hartford referred Plaintiff's claim to MLS Peer Review Services ("MLS"), a third party vendor, in order to obtain a medical review by an alleged independent physician.

22.     Upon information and belief, MLS declares on its website [2] to be in the business of providing claim review services to the disability insurance industry and is the "leading" claim review service provider available.

23.     Upon information and belief, due to its extensive business relationship with the disability insurance industry and possibly Hartford, Plaintiff believes the involvement of MLS in the review of her claim presents a conflict of interest and is a reason her claim was denied and why she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.   Due to the nature of MLS's relationship with the disability insurance industry and Hartford's reliance on MLS, Plaintiff questions the objectivity and impartiality of Hartford, MLS and any individual retained by Hartford and/or MLS to review her claim and provide a full and fair review.

24.     During the review of Plaintiff's claim, MLS referred the claim to Paul Howard, M.D. for a medical records only review.  Upon information and belief, Dr. Howard may not have been medically qualified to fully and fairly evaluate all or most of Plaintiff's serious medical conditions.

---

[2] *See* www.mls-ime.com

25.     Plaintiff believes it was unreasonable and evidence of Hartford's conflict of interest in Plaintiff's claim for it to rely solely on a "pure paper review" by referring the claim to a physician who did not examine Plaintiff or have the opportunity to personally Plaintiff's medical conditions and her disability.   A reasonable un-conflicted fiduciary making a good faith effort to afford a full and fair review would have retained a physician to examine Plaintiff personally to review Plaintiff's claim on appeal.   "ERISA imposes higher-than-marketplace quality standards on insurers" [3] and Hartford's referral of Plaintiff's claim on appeal to Dr. Howard falls well below the market place standards set forth in *Glenn* and *Montour;* [4] therefore, Hartford's actions denied Plaintiff of a full and fair review.

26.     Dr. Howard did not examine Plaintiff, only her medical records and the evidence she submitted, and his opinion that Plaintiff was not disabled from her own occupation is contrary to findings in the medical records and/or the opinions of Plaintiff's treating physicians as well as the overwhelming weight of the evidence in the administrative record. [5]

27.     Upon information and belief, Plaintiff believes Dr. Howard may have an incentive to protect his own consulting relationship(s) with the disability insurance industry and/or Hartford by providing medical review reports which selectively review and ignore

---

[3] *Id.*

[4] *See Montour v. Hartford Life & Accident Ins. Co.,* 588 F.3d 623, 634 (9th Cir. 2009).

[5] When a non-treating physician has conducted a "pure paper" review in lieu of an in-person physical exam, the choice "raises questions" as to the "thoroughness and accuracy of the benefits determinations. *See Montour v. Hartford Life & Accident Ins. Co.,* 588 F.3d 623, 634 (9th Cir. 2009).

evidence as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Hartford and which supported the denial of Plaintiff's claim.   Given the complexity of Plaintiff's disabling medical condition(s), Plaintiff believes Dr. Howard's review of her claim presents a conflict of interest in that it did not have Dr. Howard personally examine her and is a reason her claim was denied and she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

28.    In a letter dated April 29, 2010, after relying extensively on Dr. Howard's opinions as stated in a report he authored, Hartford notified Plaintiff it was upholding the denial of her claim for long term disability benefits after it erroneously found Plaintiff failed to demonstrate she was disabled as defined in the relevant policy.   Hartford's denial again failed to provide Plaintiff with a full and fair review by failing to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h) because it again completely failed to reference, consider and/or selectively reviewed most if not all of her evidence which adequately documented continued support of the fact her medical conditions had not improved and she continued to meet the definition of disability.

29.    Hartford denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the limitations set forth in her medical evidence, failing to obtain a physical examination from any physicians or one who was a disinterested, qualified physician as well as failing to evaluate the combination of all of Plaintiff's serious medical conditions and the impact the side effects from her medications would have on her ability to engage in her own or any occupation.

30.    Hartford has notified Plaintiff she has exhausted her administrative appeals.

31.     In evaluating Plaintiff's claim on appeal, Hartford had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in the interests of the plan's participants and beneficiaries" which it failed to do. [6]

32.     Plaintiff believes the reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest and this conflict is a reason her disability claim was denied.

33.     Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Hartford and any individual, including Dr. Howard, who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Hartford's decision to deny her claim.

34.     With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo* because the unlawful violations of ERISA committed by Hartford as referenced herein are flagrant.

35.     As a direct result of Hartford's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

36.     The evidence supports a finding that Plaintiff meets the "own" and "any" occupation definitions of disability in the policy.  Therefore, Plaintiff is entitled to benefits pursuant to both definitions of disability even though Defendants did not make a determination on whether she met the "any" occupation definition of disability.  As a result of Defendants' decision that she did not meet the less restrictive "own" occupation definition

---

[6] *See Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343,2350 (U.S. 2008).

of disability, it is or was administratively futile for Plaintiff to have sought a determination from Defendants with regard to whether she met the definition of disability for "any occupation" benefits before she received a final administrative denial in her claim.

37.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

38.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For an Order requiring Defendants to pay Plaintiff disability benefits pursuant to the "own" and "any" occupation definitions of disability as a result of her meeting both definitions of disability in the policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B.    For an order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the Plan or policy conditions for termination of benefits;

C.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.    For such other and further relief as the Court deems just and proper.

DATED this 26th day of May, 2010.
SCOTT E. DAVIS. P.C.

By:    /s/ Scott E. Davis
        Scott E. Davis
        Attorney for Plaintiff